**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE,<br><br>                         Plaintiff,<br><br>          v.<br><br>GENESIS HEALTHCARE and 1526<br>LOMBARD STREET SNF OPERATIONS,<br>LLC d/b/a POWERBACK<br>REHABILITATION 1526 LOMBARD<br>STREET,<br><br>                         Defendants. | CASE NO. _____ |

## **COMPLAINT**

### **PARTIES**

1.      Plaintiff, Jane Doe, is an adult individual who resides at

███████████████████████████████████████████.  Plaintiff is a

transgender female.  Plaintiff identifies with the pronouns, "she," "her," and "hers."

2.      Defendant, Genesis HealthCare, employed Plaintiff, at all times relevant hereto.

Defendant, Genesis HealthCare, is a healthcare organization, with a principal place of business at

101 East State Street, Kennett Square, PA 19348.  Defendant, Genesis HealthCare, was, at all

times relevant hereto, upon information and belief, Plaintiff's employer, and employed Plaintiff

at a worksite located at 1526 Lombard Street, Philadelphia, PA 19146.

3.      Defendant, 1526 Lombard Street SNF Operations, LLC d/b/a PowerBack

Rehabilitation 1526 Lombard Street, is a corporation organized and existing under the laws of

the Commonwealth of Pennsylvania, with a corporate headquarters and/or principal place of

business at 1526 Lombard Street, Philadelphia, PA 19146.  This Defendant was, upon

information and belief, Plaintiff's employer, at all times relevant hereto, and, upon information and belief, controlled the worksite located at 1526 Lombard Street, Philadelphia, PA 19146.

4.      Defendants are a for-profit corporation in the business of providing post-hospital rehabilitation and skilled nursing care at 1526 Lombard Street, Philadelphia, PA 19146.  Plaintiff was specifically employed, at all times relevant hereto, at 1526 Lombard Street, Philadelphia, PA 19146, as a Certified Nursing Assistant ("CNA").

5.      The Equal Employment Opportunity ("EEO") policy submitted by Defendants to the Equal Employment Opportunity Commission ("EEOC"), in the instant case, is the EEO policy of "Genesis HealthCare and its subsidiaries ('Company')"; the corporate Human Resources ("HR") department which created the policy is the corporate HR department of Genesis HealthCare; the Problem Resolution Procedure policy submitted by Defendants to the EEOC in the instant case also states it is for Genesis; and the Plaintiff's Job Description stated it was for Genesis HealthCare.

6.      Defendants, specifically Ms. Traci Fegley, Regional HR Manager for Genesis Administrative Services, and Chris Donato, Paralegal for Genesis Administrative Services, also submitted a Position Statement to the EEOC, in this matter, on letterhead of Genesis.  Plaintiff contends that the statements and representations made to the EEOC and in the Position Statement, about Plaintiff's work conduct, are false and pretextual.

## **JURISDICTION AND VENUE**

7.      This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because the claims present a federal question.

8.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state-law claims, as those claims arise out of the same set of operative facts as the federal claims.

9.      This Court has jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310 (1945), and its progeny.

10.      Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1)-(b)(2) because Defendants reside in and/or conduct business in this judicial district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

11.      At all times relevant hereto, Defendants each employed fifteen (15) or more persons for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

12.      Plaintiff has exhausted any applicable administrative remedies.  A Notice of Right-to-Sue from the Equal Employment Opportunity Commission ("EEOC") is attached hereto as Exhibit "A."

**COUNT I:**
**HOSTILE WORK ENVIRONMENT/HARASSMENT BASED ON GENDER IDENTITY/SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et seq.**
**(Plaintiff, Jane Doe v. Defendants, Genesis HealthCare and 1526 Lombard Street SNF Operations, LLC d/b/a PowerBack Rehabilitation 1526 Lombard Street)**

13.      All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

14.     Plaintiff began employment with Defendants as a Certified Nursing Assistant ("CNA") at 1526 Lombard Street, Philadelphia, PA 19146, a skilled nursing and rehabilitation center, on or about February 19, 2019.

15.     Plaintiff is a transgender woman.

16.     Plaintiff was subjected to a hostile environment/harassment based on gender identity/sex, during her employment with Defendants, to wit:

a.     During Doe's employment, Doe was misgendered and harassed including with incorrect pronouns.

b.     During Doe's employment, Tameka Miller, Charge Nurse, would tell patients that Doe was male and/or use "he," "him," "his" pronouns when referring to Doe. This occurred multiple times during Doe's employment.

c.     Doe recollects that a patient questioned Doe including with statements like, "I thought a man was supposed to come in and help me," or words to that effect.

d.     Doe was outed as transgender beyond an extent to which she was comfortable and felt unsafe.

e.     Doe reported the misconduct to Unit Manager, Ms. Bradley, in or around December 2019/January 2020.

f.     In or around February 2020, Sandra Thompson, Director of Nursing ("DON"), accused Doe of making a statement about another employee behind their back, which was not true, and which statement Doe denies making.  When Doe denied making the statement, Ms. Thompson said, "You look like someone that would say something like this."  Doe responded, "What does a person who would say something like that look like?"  Ms. Thompson said, "A person like you shouldn't

4

be coming into work talking about anyone else's appearance," "A person like you should be coming into work staying below the radar, you are not here to get attention, you are here to do your work, and go home," "I don't care if you're offended," and "I don't care if your feelings are hurt."

g.  Ms. Thompson wanted Doe to agree with Ms. Thompson that Doe made a statement about another employee behind their back, which Doe would not do because Doe denied making the statement.

h.  Ms. Thompson then stated falsely to Doe that they had camera footage of Doe saying the comment, or words to that effect, which, upon information and belief, is not true.

i.  Doe suffered tangible employment action – Doe was wrongfully suspended on or about February 12, 2020, and subsequently wrongfully terminated/discharged thereafter in or around February 2020, on account of discrimination due to gender identity/sex, and in retaliation for Doe's protected conduct/activity including rebuffs of misgendering, harassment, discrimination, and her complaint to the Unit Manager, Ms. Bradley, about the same.

17.    Doe believed she was experiencing discrimination on account of her gender identity at the time, and therefore, shortly after Doe's discharge, in or around February 2020, Doe lodged a formal "grievance complaint" with Genesis Corporate.  Doe did not receive any response to her complaint to Genesis Corporate.

18.    Shortly after Doe's discharge, Doe also filed a formal complaint with the U.S. Department of Health and Human Services, Office of Civil Rights, about Doe's wrongful discharge/termination.

19.     Doe also grieved her termination with the union without success.

20.     Defendants' system of progressive discipline traditionally includes the following: (1) "Individual Performance Improvement Plan ('IPIP') Counseling Only – Non-Disciplinary," (2) "First Counseling," (3) "Second Counseling," (4) "Final Counseling," and then "Termination of Employment."  There are four (4) steps short of termination of employment.  Doe did not receive any of the above steps of progressive discipline short of termination of employment.  This deviates from the corrective opportunities afforded to similarly-situated employees, including cisgender employees.

21.     Doe points to a number of similarly-situated employees, described below, all of whom are cisgender, and who were treated less harshly, but committed more serious conduct, and were not terminated, constituting disparate treatment:

a.      Doe filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and during the administrative phase of the instant case, Defendants identified to the EEOC that Ms. Andrea Crawford, CNA, Unit 2, was suspended pending investigation into a complaint lodged by a resident alleging that Ms. Crawford made a derogatory statement toward the resident.  Defendants represent that whether Ms. Crawford made the derogatory statement was determined to be unfounded, but Ms. Crawford received an IPIP for unsatisfactory job performance.  Ms. Crawford was not terminated.

b.      Defendants also identified to the EEOC, in response to Doe's EEOC charge, that Nashonda Gittings, CNA, received an IPIP for engaging in verbal disagreement with a coworker.  Ms. Gittings was not terminated.

c.      Doe also recollects Ms. Giddings had negative interactions with co-employees and issues with patients directly, on multiple occasions, to Doe's recollection, but Ms. Gittings was not disciplined and was not terminated.

d.      Doe recollects Ms. Gittings on one occasion got in a supervisor's face aggressively on the elevator and called the supervisor a "bitch." Ms. Gittings was not terminated.

e.      Defendants also identified to the EEOC, in response to Doe's EEOC charge, that Ms. Jackie Braxton, CNA, had an IPIP for unsatisfactory job performance concerning a resident care issue. Ms. Braxton was not terminated.

f.      Doe recollects that Ms. Braxton had multiple issues with patients to Doe's recollection but was not disciplined or terminated.

g.      Defendants identified to the EEOC, in response to Doe's EEOC charge, that Ms. Tameka Miller, Charge Nurse, who was in a supervisory or managerial capacity, was issued a Final Written Warning for insubordination regarding an incident with another employee. Ms. Miller was not terminated. Furthermore, Ms. Miller was _not_ in a union, while Doe _was_.

h.      Doe did _not_ receive an IPIP, a First Warning, a Second Warning, nor a Final Written Warning – no such similar corrective opportunity afforded to similarly-situated employees – short of Doe's termination.

i.      Furthermore, the Cook for the establishment, a White/Caucasian male who is believed to be cisgender, would regularly come to work intoxicated, is believed to have received corrective actions, but was not terminated.

22.      Sixteen (16) days elapsed from the time of Doe's suspension until her termination. This deviates markedly from procedure for union employees, it is believed, because

7

Doe recollects being told by Mr. Michael Meagher (position title not known), an individual associated with Doe's union, that there is a "72 hour rule" in which the employer is required to come to a determination, or words to that effect, which the Defendants did _not_ here.  Mr. Meagher is believed to be the correct person to go to at the union, when you need to go above others at the union, above a union representative or a steward.  Doe was contacting Mr. Meagher regarding the circumstances of her wrongful discharge/termination which Doe believed were discriminatory.  Doe grieved through the union without success.

      **WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to adopt, post, and disseminate a non-discrimination and anti-harassment policy which specifically covers gender identity and expression, if lacking; to provide anti-harassment training; and for Defendants to post notice of the verdict in this matter.

**COUNT II:**
**WRONGFUL DISCHARGE/TERMINATION BASED ON GENDER IDENTITY/SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. § 2000e, et seq.**
**(Plaintiff, Jane Doe v. Defendants, Genesis HealthCare and 1526 Lombard Street SNF Operations, LLC d/b/a PowerBack Rehabilitation 1526 Lombard Street)**

      23.    All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

      24.    In or around February 2020, Sandra Thompson, Director of Nursing ("DON"), accused Doe of making a statement about another employee behind their back, which was not

8

true, and which statement Doe denies making.  When Doe denied making the statement, Ms. Thompson said, "You look like someone that would say something like this."  Doe responded, "What does a person who would say something like that look like?"  Ms. Thompson said, "A person like you shouldn't be coming into work talking about anyone else's appearance," "A person like you should be coming into work staying below the radar, you are not here to get attention, you are here to do your work, and go home," "I don't care if you're offended," and "I don't care if your feelings are hurt."

25.     Ms. Thompson wanted Doe to agree with Ms. Thompson that Doe made a statement about another employee behind their back, which Doe would not do because Doe denied making the statement.

26.     Ms. Thompson then stated falsely to Doe that they had camera footage of Doe saying the comment, or words to that effect, which, upon information and belief, is not true.

27.     Doe was wrongfully suspended on or about February 12, 2020, and subsequently wrongfully terminated/discharged thereafter in or around February 2020, on account of discrimination due to gender identity/sex, and in retaliation for Doe's protected conduct/activity including rebuffs of misgendering, harassment, discrimination, and her complaint to the Unit Manager, Ms. Bradley, about the same.

28.     Doe believed she was experiencing discrimination on account of her gender identity at the time, and therefore, shortly after Doe's discharge, in or around February 2020, Doe lodged a formal "grievance complaint" with Genesis Corporate.  Doe did not receive any response to her complaint to Genesis Corporate.

29.     Shortly after Doe's discharge, Doe also filed a formal complaint with the U.S. Department of Health and Human Services, Office of Civil Rights, about Doe's wrongful discharge/termination.

30.     Doe also grieved her termination with the union without success.

31.     Defendants' system of progressive discipline traditionally includes the following: (1) "Individual Performance Improvement Plan ('IPIP') Counseling Only – Non-Disciplinary," (2) "First Counseling," (3) "Second Counseling," (4) "Final Counseling," and then "Termination of Employment."  There are four (4) steps short of termination of employment.  Doe did not receive any of the above steps of progressive discipline short of termination of employment. This deviates from the corrective opportunities afforded to similarly-situated employees, including cisgender employees.

32.     Doe points to a number of similarly-situated employees, described below, all of whom are cisgender, and who were treated less harshly, but committed more serious conduct, and were not terminated, constituting disparate treatment:

a.     Doe filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and during the administrative phase of the instant case, Defendants identified to the EEOC that Ms. Andrea Crawford, CNA, Unit 2, was suspended pending investigation into a complaint lodged by a resident alleging that Ms. Crawford made a derogatory statement toward the resident.  Defendants represent that whether Ms. Crawford made the derogatory statement was determined to be unfounded, but Ms. Crawford received an IPIP for unsatisfactory job performance.  Ms. Crawford was not terminated.

b.      Defendants also identified to the EEOC, in response to Doe's EEOC charge, that Nashonda Gittings, CNA, received an IPIP for engaging in verbal disagreement with a coworker. Ms. Gittings was not terminated.

c.      Doe also recollects Ms. Giddings had negative interactions with co-employees and issues with patients directly, on multiple occasions, to Doe's recollection, but Ms. Gittings was not disciplined and was not terminated.

d.      Doe recollects Ms. Gittings on one occasion got in a supervisor's face aggressively on the elevator and called the supervisor a "bitch."  Ms. Gittings was not terminated.

e.      Defendants also identified to the EEOC, in response to Doe's EEOC charge, that Ms. Jackie Braxton, CNA, had an IPIP for unsatisfactory job performance concerning a resident care issue.  Ms. Braxton was not terminated.

f.      Doe recollects that Ms. Braxton had multiple issues with patients to Doe's recollection but was not disciplined or terminated.

g.      Defendants identified to the EEOC, in response to Doe's EEOC charge, that Ms. Tameka Miller, Charge Nurse, who was in a supervisory or managerial capacity, was issued a Final Written Warning for insubordination regarding an incident with another employee.  Ms. Miller was not terminated.  Furthermore, Ms. Miller was _not_ in a union, while Doe _was_.

h.      Doe did _not_ receive an IPIP, a First Warning, a Second Warning, nor a Final Written Warning – no such similar corrective opportunity afforded to similarly-situated employees – short of Doe's termination.

i.      Furthermore, the Cook for the establishment, a White/Caucasian male who is believed to be cisgender, would regularly come to work intoxicated, is believed to have received corrective actions, but was not terminated.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to adopt, post, and disseminate a non-discrimination and anti-harassment policy which specifically covers gender identity and expression, if lacking; to provide anti-discrimination, anti-harassment, and anti-retaliation training; and for Defendants to post notice of the verdict in this matter.

**COUNT III:**
**RETALIATORY DISCHARGE/TERMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et seq.**
**(Plaintiff, Jane Doe v. Defendants, Genesis HealthCare and 1526 Lombard Street SNF Operations, LLC d/b/a PowerBack Rehabilitation 1526 Lombard Street)**

33.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

34.     In or around February 2020, Sandra Thompson, Director of Nursing ("DON"), accused Doe of making a statement about another employee behind their back, which was not true, and which statement Doe denies making. When Doe denied making the statement, Ms. Thompson said, "You look like someone that would say something like this." Doe responded,

"What does a person who would say something like that look like?"  Ms. Thompson said, "A person like you shouldn't be coming into work talking about anyone else's appearance," "A person like you should be coming into work staying below the radar, you are not here to get attention, you are here to do your work, and go home," "I don't care if you're offended," and "I don't care if your feelings are hurt."

35.     Ms. Thompson wanted Doe to agree with Ms. Thompson that Doe made a statement about another employee behind their back, which Doe would not do because Doe denied making the statement.

36.     Ms. Thompson then stated falsely to Doe that they had camera footage of Doe saying the comment, or words to that effect, which, upon information and belief, is not true.

37.     Doe was wrongfully suspended on or about February 12, 2020, and subsequently wrongfully terminated/discharged thereafter in or around February 2020, on account of discrimination due to gender identity/sex, and in retaliation for Doe's protected conduct/activity including rebuffs of misgendering, harassment, discrimination, and her complaint to the Unit Manager, Ms. Bradley, about the same.

38.     Doe believed she was experiencing discrimination on account of her gender identity at the time, and therefore, shortly after Doe's discharge, in or around February 2020, Doe lodged a formal "grievance complaint" with Genesis Corporate.  Doe did not receive any response to her complaint to Genesis Corporate.

39.     Shortly after Doe's discharge, Doe also filed a formal complaint with the U.S. Department of Health and Human Services, Office of Civil Rights, about Doe's wrongful discharge/termination.

40.     Doe also grieved her termination with the union without success.

41.     Defendants' system of progressive discipline traditionally includes the following: (1) "Individual Performance Improvement Plan ('IPIP') Counseling Only – Non-Disciplinary," (2) "First Counseling," (3) "Second Counseling," (4) "Final Counseling," and then "Termination of Employment."  There are four (4) steps short of termination of employment.  Doe did not receive any of the above steps of progressive discipline short of termination of employment. This deviates from the corrective opportunities afforded to similarly-situated employees, including cisgender employees.

42.     Doe points to a number of similarly-situated employees, described below, all of whom are cisgender, and who were treated less harshly, but committed more serious conduct, and were not terminated, constituting disparate treatment:

a.      Doe filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and during the administrative phase of the instant case, Defendants identified to the EEOC that Ms. Andrea Crawford, CNA, Unit 2, was suspended pending investigation into a complaint lodged by a resident alleging that Ms. Crawford made a derogatory statement toward the resident.  Defendants represent that whether Ms. Crawford made the derogatory statement was determined to be unfounded, but Ms. Crawford received an IPIP for unsatisfactory job performance.  Ms. Crawford was not terminated.

b.      Defendants also identified to the EEOC, in response to Doe's EEOC charge, that Nashonda Gittings, CNA, received an IPIP for engaging in verbal disagreement with a coworker. Ms. Gittings was not terminated.

c.      Doe also recollects Ms. Giddings had negative interactions with co-employees and issues with patients directly, on multiple occasions, to Doe's recollection, but Ms. Gittings was not disciplined and was not terminated.

d.     Doe recollects Ms. Gittings on one occasion got in a supervisor's face aggressively on the elevator and called the supervisor a "bitch." Ms. Gittings was not terminated.

e.     Defendants also identified to the EEOC, in response to Doe's EEOC charge, that Ms. Jackie Braxton, CNA, had an IPIP for unsatisfactory job performance concerning a resident care issue. Ms. Braxton was not terminated.

f.     Doe recollects that Ms. Braxton had multiple issues with patients to Doe's recollection but was not disciplined or terminated.

g.     Defendants identified to the EEOC, in response to Doe's EEOC charge, that Ms. Tameka Miller, Charge Nurse, who was in a supervisory or managerial capacity, was issued a Final Written Warning for insubordination regarding an incident with another employee. Ms. Miller was not terminated. Furthermore, Ms. Miller was *not* in a union, while Doe *was*.

h.     Doe did *not* receive an IPIP, a First Warning, a Second Warning, nor a Final Written Warning – no such similar corrective opportunity afforded to similarly-situated employees – short of Doe's termination.

i.     Furthermore, the Cook for the establishment, a White/Caucasian male who is believed to be cisgender, would regularly come to work intoxicated, is believed to have received corrective actions, but was not terminated.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of

suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to adopt, post, and disseminate a non-discrimination and anti-harassment policy which specifically covers gender identity and expression, if lacking; to provide anti-discrimination, anti-harassment, and anti-retaliation training; and for Defendants to post notice of the verdict in this matter.

**COUNT IV:**
**HOSTILE WORK ENVIRONMENT/HARASSMENT BASED ON DISABILITY,**
**IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED,**
**42 U.S.C. § 12101, <u>et seq.</u>**
**(Plaintiff, Jane Doe v. Defendants, Genesis HealthCare and 1526 Lombard Street SNF**
**<u>Operations, LLC d/b/a PowerBack Rehabilitation 1526 Lombard Street</u>)**

43.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

44.     Plaintiff is covered under the Americans with Disabilities Act ("ADA"), as amended, to wit:

a.     Plaintiff has an actual physical impairment in that Plaintiff has a biological condition plausibly of physical origin due to brain neuroanatomy, and the formation of that brain neuroanatomy in the womb, which substantially limits the major life activities of interacting with others, social functioning, and reproducing.

b.     Plaintiff has a record of a disability in the form of a biological condition plausibly of physical origin when Plaintiff's brain neuroanatomy was formed in the womb before birth resulting in Plaintiff's anatomical sex not corresponding with Plaintiff's gender identity.

c.     Plaintiff was perceived or regarded by Defendants as disabled in that Defendants stereotyped Plaintiff as having a mental impairment and/or not being able to think.  However, being transgender is <u>*not*</u> a mental disorder.

16

d.      Any exclusion of persons who are transgender from the ADA, as amended, is unconstitutional as violating equal protection under the Due Process Clause of the Fifth Amendment to the United States Constitution.

e.      Alternatively, upon information and belief, Plaintiff has an actual physical and/or mental impairment in the form of gender dysphoria ("GD"), defined as clinically significant distress associated with being transgender, which substantially limits the major life activities of interacting with others, social functioning, and reproducing.

45.     Defendants subjected Plaintiff to a hostile work environment/harassment, which was severe or pervasive enough to alter the conditions of Plaintiff's working environment, and made it more difficult to do the job, in violation of the ADA, to wit:

a.      During Doe's employment, Doe was misgendered and harassed including with incorrect pronouns.

b.      During Doe's employment, Tameka Miller, Charge Nurse, would tell patients that Doe was male and/or use "he," "him," "his" pronouns when referring to Doe. This occurred multiple times during Doe's employment.

c.      Doe recollects that a patient questioned Doe including with statements like, "I thought a man was supposed to come in and help me," or words to that effect.

d.      Doe was outed as transgender beyond an extent to which she was comfortable and felt unsafe.

e.      Doe reported the misconduct to Unit Manager, Ms. Bradley, in or around December 2019/January 2020.

f.      In or around February 2020, Sandra Thompson, Director of Nursing ("DON"), accused Doe of making a statement about another employee behind their back,

which was not true, and which statement Doe denies making.  When Doe denied

making the statement, Ms. Thompson said, "You look like someone that would

say something like this."  Doe responded, "What does a person who would say

something like that look like?"  Ms. Thompson said, "A person like you shouldn't

be coming into work talking about anyone else's appearance," "A person like you

should be coming into work staying below the radar, you are not here to get

attention, you are here to do your work, and go home," "I don't care if you're

offended," and "I don't care if your feelings are hurt."

g.      Ms. Thompson wanted Doe to agree with Ms. Thompson that Doe made a

statement about another employee behind their back, which Doe would not do

because Doe denied making the statement.

h.      Ms. Thompson then stated falsely to Doe that they had camera footage of Doe

saying the comment, or words to that effect, which, upon information and belief,

is not true.

i.      Doe suffered tangible employment action – Doe was wrongfully suspended on or

about February 12, 2020, and subsequently wrongfully terminated/discharged

thereafter in or around February 2020, on account of discrimination due to

disability, and in retaliation for Doe's protected conduct/activity including rebuffs

of misgendering, harassment, discrimination, and her complaint to the Unit

Manager, Ms. Bradley, about the same.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against

Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses,

commissions, and any promotions Plaintiff would have received; compensatory damages for pain

and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to provide anti-harassment training; and for Defendants to post notice of the verdict in this matter.

**COUNT V:**
**WRONGFUL DISCHARGE/TERMINATION BASED ON DISABILITY,**
**IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED,**
**42 U.S.C. § 12101, <u>et seq.</u>**
**(Plaintiff, Jane Doe v. Defendants, Genesis HealthCare and 1526 Lombard Street SNF**
**<u>Operations, LLC d/b/a PowerBack Rehabilitation 1526 Lombard Street</u>)**

46.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

47.     In or around February 2020, Sandra Thompson, Director of Nursing ("DON"), accused Doe of making a statement about another employee behind their back, which was not true, and which statement Doe denies making.  When Doe denied making the statement, Ms. Thompson said, "You look like someone that would say something like this."  Doe responded, "What does a person who would say something like that look like?"  Ms. Thompson said, "A person like you shouldn't be coming into work talking about anyone else's appearance," "A person like you should be coming into work staying below the radar, you are not here to get attention, you are here to do your work, and go home," "I don't care if you're offended," and "I don't care if your feelings are hurt."

48.     Ms. Thompson wanted Doe to agree with Ms. Thompson that Doe made a statement about another employee behind their back, which Doe would not do because Doe denied making the statement.

19

49.     Ms. Thompson then stated falsely to Doe that they had camera footage of Doe saying the comment, or words to that effect, which, upon information and belief, is not true.

50.     Doe was wrongfully suspended on or about February 12, 2020, and subsequently wrongfully terminated/discharged thereafter in or around February 2020, on account of discrimination due to gender identity/sex, and in retaliation for Doe's protected conduct/activity including rebuffs of misgendering, harassment, discrimination, and her complaint to the Unit Manager, Ms. Bradley, about the same.

51.     Doe believed she was experiencing discrimination on account of her gender identity at the time, and therefore, shortly after Doe's discharge, in or around February 2020, Doe lodged a formal "grievance complaint" with Genesis Corporate.  Doe did not receive any response to her complaint to Genesis Corporate.

52.     Shortly after Doe's discharge, Doe also filed a formal complaint with the U.S. Department of Health and Human Services, Office of Civil Rights, about Doe's wrongful discharge/termination.

53.     Doe also grieved her termination with the union without success.

54.     Defendants' system of progressive discipline traditionally includes the following: (1) "Individual Performance Improvement Plan ('IPIP') Counseling Only – Non-Disciplinary," (2) "First Counseling," (3) "Second Counseling," (4) "Final Counseling," and then "Termination of Employment."  There are four (4) steps short of termination of employment.  Doe did not receive any of the above steps of progressive discipline short of termination of employment. This deviates from the corrective opportunities afforded to similarly-situated employees, including cisgender employees.

55.     Doe points to a number of similarly-situated employees, described below, all of whom are cisgender, and who were treated less harshly, but committed more serious conduct, and were not terminated, constituting disparate treatment:

a.      Doe filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and during the administrative phase of the instant case, Defendants identified to the EEOC that Ms. Andrea Crawford, CNA, Unit 2, was suspended pending investigation into a complaint lodged by a resident alleging that Ms. Crawford made a derogatory statement toward the resident.  Defendants represent that whether Ms. Crawford made the derogatory statement was determined to be unfounded, but Ms. Crawford received an IPIP for unsatisfactory job performance.  Ms. Crawford was not terminated.

b.      Defendants also identified to the EEOC, in response to Doe's EEOC charge, that Nashonda Gittings, CNA, received an IPIP for engaging in verbal disagreement with a coworker. Ms. Gittings was not terminated.

c.      Doe also recollects Ms. Giddings had negative interactions with co-employees and issues with patients directly, on multiple occasions, to Doe's recollection, but Ms. Gittings was not disciplined and was not terminated.

d.      Doe recollects Ms. Gittings on one occasion got in a supervisor's face aggressively on the elevator and called the supervisor a "bitch."  Ms. Gittings was not terminated.

e.      Defendants also identified to the EEOC, in response to Doe's EEOC charge, that Ms. Jackie Braxton, CNA, had an IPIP for unsatisfactory job performance concerning a resident care issue.  Ms. Braxton was not terminated.

f.      Doe recollects that Ms. Braxton had multiple issues with patients to Doe's recollection but was not disciplined or terminated.

g.      Defendants identified to the EEOC, in response to Doe's EEOC charge, that Ms. Tameka Miller, Charge Nurse, who was in a supervisory or managerial capacity, was issued a Final Written Warning for insubordination regarding an incident with another employee.  Ms. Miller was not terminated.  Furthermore, Ms. Miller was *not* in a union, while Doe *was*.

h.      Doe did *not* receive an IPIP, a First Warning, a Second Warning, nor a Final Written Warning – no such similar corrective opportunity afforded to similarly-situated employees – short of Doe's termination.

i.      Furthermore, the Cook for the establishment, a White/Caucasian male who is believed to be cisgender, would regularly come to work intoxicated, is believed to have received corrective actions, but was not terminated.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to provide anti-discrimination, anti-harassment, and anti-retaliation training; and for Defendants to post notice of the verdict in this matter.

**COUNT VI:**
**FAILURE-TO-ACCOMMODATE DISABILITY IN VIOLATION OF THE**
**AMERICANS WITH DISABILITIES ACT, AS AMENDED,**
**42 U.S.C. § 12101, <u>et seq.</u>**
**(Plaintiff, Jane Doe v. Defendants, Genesis HealthCare and 1526 Lombard Street SNF**
**<u>Operations, LLC d/b/a PowerBack Rehabilitation 1526 Lombard Street)</u>**

56.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

57.     Defendants failed to accommodate Plaintiff's known disability in violation of the ADA, to wit:

a.      During Doe's employment, Doe was misgendered and harassed including with incorrect pronouns.

b.      During Doe's employment, Tameka Miller, Charge Nurse, would tell patients that Doe was male and/or use "he," "him," "his" pronouns when referring to Doe. This occurred multiple times during Doe's employment.

c.      Doe recollects that a patient questioned Doe including with statements like, "I thought a man was supposed to come in and help me," or words to that effect.

d.      Doe was outed as transgender beyond an extent to which she was comfortable and felt unsafe.

e.      Doe reported the misconduct to Unit Manager, Ms. Bradley, in or around December 2019/January 2020.

f.      In or around February 2020, Sandra Thompson, Director of Nursing ("DON"), accused Doe of making a statement about another employee behind their back, which was not true, and which statement Doe denies making.  When Doe denied making the statement, Ms. Thompson said, "You look like someone that would say something like this."  Doe responded, "What does a person who would say something like that look like?"  Ms. Thompson said, "A person like you shouldn't be coming into work talking about anyone else's appearance," "A person like you should be coming into work staying below the radar, you are not here to get

attention, you are here to do your work, and go home," "I don't care if you're

offended," and "I don't care if your feelings are hurt."

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against

Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses,

commissions, and any promotions Plaintiff would have received; compensatory damages for pain

and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional

distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of

suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment

reference for Plaintiff; to adopt, post, and disseminate a non-discrimination and anti-harassment

policy which specifically covers gender identity and expression, if lacking; to provide anti-

discrimination, anti-harassment, and anti-retaliation training; and for Defendants to post notice of

the verdict in this matter.

**COUNT VII:**
**RETALIATORY DISCHARGE/TERMINATION FOR REQUESTS FOR REASONABLE**
**ACCOMODATIONS IN VIOLATION OF THE AMERICANS WITH DISABILITIES**
**ACT, AS AMENDED, 42 U.S.C. § 12101, et seq.**
**(Plaintiff, Jane Doe v. Defendants, Genesis HealthCare and 1526 Lombard Street SNF**
**Operations, LLC d/b/a PowerBack Rehabilitation 1526 Lombard Street)**

58.     All of the foregoing paragraphs are hereby incorporated as if the same were more

fully set forth herein at length.

59.     In or around February 2020, Sandra Thompson, Director of Nursing ("DON"),

accused Doe of making a statement about another employee behind their back, which was not

true, and which statement Doe denies making.  When Doe denied making the statement, Ms.

Thompson said, "You look like someone that would say something like this."  Doe responded,

"What does a person who would say something like that look like?"  Ms. Thompson said, "A

person like you shouldn't be coming into work talking about anyone else's appearance," "A

24

person like you should be coming into work staying below the radar, you are not here to get attention, you are here to do your work, and go home," "I don't care if you're offended," and "I don't care if your feelings are hurt."

60.     Ms. Thompson wanted Doe to agree with Ms. Thompson that Doe made a statement about another employee behind their back, which Doe would not do because Doe denied making the statement.

61.     Ms. Thompson then stated falsely to Doe that they had camera footage of Doe saying the comment, or words to that effect, which, upon information and belief, is not true.

62.     Doe was wrongfully suspended on or about February 12, 2020, and subsequently wrongfully terminated/discharged thereafter in or around February 2020, on account of discrimination due to gender identity/sex, and in retaliation for Doe's protected conduct/activity including rebuffs of misgendering, harassment, discrimination, and her complaint to the Unit Manager, Ms. Bradley, about the same.

63.     Doe believed she was experiencing discrimination on account of her gender identity at the time, and therefore, shortly after Doe's discharge, in or around February 2020, Doe lodged a formal "grievance complaint" with Genesis Corporate.  Doe did not receive any response to her complaint to Genesis Corporate.

64.     Shortly after Doe's discharge, Doe also filed a formal complaint with the U.S. Department of Health and Human Services, Office of Civil Rights, about Doe's wrongful discharge/termination.

65.     Doe also grieved her termination with the union without success.

66.     Defendants' system of progressive discipline traditionally includes the following: (1) "Individual Performance Improvement Plan ('IPIP') Counseling Only – Non-Disciplinary,"

(2) "First Counseling," (3) "Second Counseling," (4) "Final Counseling," and then "Termination of Employment." There are four (4) steps short of termination of employment. Doe did not receive any of the above steps of progressive discipline short of termination of employment. This deviates from the corrective opportunities afforded to similarly-situated employees, including cisgender employees.

67.    Doe points to a number of similarly-situated employees, described below, all of whom are cisgender, and who were treated less harshly, but committed more serious conduct, and were not terminated, constituting disparate treatment:

a.    Doe filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and during the administrative phase of the instant case, Defendants identified to the EEOC that Ms. Andrea Crawford, CNA, Unit 2, was suspended pending investigation into a complaint lodged by a resident alleging that Ms. Crawford made a derogatory statement toward the resident. Defendants represent that whether Ms. Crawford made the derogatory statement was determined to be unfounded, but Ms. Crawford received an IPIP for unsatisfactory job performance. Ms. Crawford was not terminated.

b.    Defendants also identified to the EEOC, in response to Doe's EEOC charge, that Nashonda Gittings, CNA, received an IPIP for engaging in verbal disagreement with a coworker. Ms. Gittings was not terminated.

c.    Doe also recollects Ms. Giddings had negative interactions with co-employees and issues with patients directly, on multiple occasions, to Doe's recollection, but Ms. Gittings was not disciplined and was not terminated.

d.      Doe recollects Ms. Gittings on one occasion got in a supervisor's face
aggressively on the elevator and called the supervisor a "bitch."  Ms. Gittings was
not terminated.

e.      Defendants also identified to the EEOC, in response to Doe's EEOC charge, that
Ms. Jackie Braxton, CNA, had an IPIP for unsatisfactory job performance
concerning a resident care issue.  Ms. Braxton was not terminated.

f.      Doe recollects that Ms. Braxton had multiple issues with patients to Doe's
recollection but was not disciplined or terminated.

g.      Defendants identified to the EEOC, in response to Doe's EEOC charge, that Ms.
Tameka Miller, Charge Nurse, who was in a supervisory or managerial capacity,
was issued a Final Written Warning for insubordination regarding an incident
with another employee.  Ms. Miller was not terminated.  Furthermore, Ms. Miller
was _not_ in a union, while Doe _was_.

h.      Doe did _not_ receive an IPIP, a First Warning, a Second Warning, nor a Final
Written Warning – no such similar corrective opportunity afforded to similarly-
situated employees – short of Doe's termination.

i.      Furthermore, the Cook for the establishment, a White/Caucasian male who is
believed to be cisgender, would regularly come to work intoxicated, is believed to
have received corrective actions, but was not terminated.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against
Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses,
commissions, and any promotions Plaintiff would have received; compensatory damages for pain
and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional

distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to adopt, post, and disseminate a non-discrimination and anti-harassment policy which specifically covers gender identity and expression, if lacking; to provide anti-discrimination, anti-harassment, and anti-retaliation training; and for Defendants to post notice of the verdict in this matter.

**COUNT VIII:**
**HOSTILE WORK ENVIRONMENT/HARASSMENT BASED ON DISABILITY,**
**IN VIOLATION OF THE CITY OF PHILADELPHIA FAIR PRACTICES ORDINANCE**
**("PFPO"), PHILADELPHIA CODE, § 9-1101, *et seq.***
**(Plaintiff, Jane Doe v. Defendants, Genesis HealthCare and 1526 Lombard Street SNF**
**<u>Operations, LLC d/b/a PowerBack Rehabilitation 1526 Lombard Street)</u>**

68.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

69.     The Philadelphia Fair Practices Ordinance ("PFPO") expressly extends to "gender identity" as well as "gender expression," and Plaintiff is covered under the PFPO, which contains no exclusion of "transsexualism" [*sic.*] or "gender identity disorders" [*sic.*], in its text, to wit:

a.      Plaintiff has an actual physical impairment in that Plaintiff has a biological condition plausibly of physical origin due to brain neuroanatomy, and the formation of that brain neuroanatomy in the womb, which substantially limits the major life activities of interacting with others, social functioning, and reproducing.

b.      Plaintiff has a record of a disability in the form of a biological condition plausibly of physical origin when Plaintiff's brain neuroanatomy was formed in the womb

28

before birth resulting in Plaintiff's anatomical sex not corresponding with

Plaintiff's gender identity.

c.      Plaintiff was perceived or regarded by Defendants as disabled in that Defendants

stereotyped Plaintiff as having a mental impairment and/or not being able to

think.  However, being transgender is *not* a mental disorder.

d.      Any exclusion of persons who are transgender from the PFPO, as amended, is

unconstitutional as violating equal protection under the Due Process Clause of the

Fifth and Fourteenth Amendments to the United States Constitution.

e.      Alternatively, upon information and belief, Plaintiff has an actual physical and/or

mental impairment in the form of gender dysphoria ("GD"), defined as clinically

significant distress associated with being transgender, which substantially limits

the major life activities of interacting with others, social functioning, and

reproducing.

70.     Defendants subjected Plaintiff to a hostile work environment/harassment, which

was severe or pervasive enough to alter the conditions of Plaintiff's working environment, and

made it more difficult to do the job, in violation of the PFPO, to wit:

a.      During Doe's employment, Doe was misgendered and harassed including with

incorrect pronouns.

b.      During Doe's employment, Tameka Miller, Charge Nurse, would tell patients that

Doe was male and/or use "he," "him," "his" pronouns when referring to Doe.

This occurred multiple times during Doe's employment.

c.      Doe recollects that a patient questioned Doe including with statements like, "I

thought a man was supposed to come in and help me," or words to that effect.

29

d.      Doe was outed as transgender beyond an extent to which she was comfortable and felt unsafe.

e.      Doe reported the misconduct to Unit Manager, Ms. Bradley, in or around December 2019/January 2020.

f.      In or around February 2020, Sandra Thompson, Director of Nursing ("DON"), accused Doe of making a statement about another employee behind their back, which was not true, and which statement Doe denies making.  When Doe denied making the statement, Ms. Thompson said, "You look like someone that would say something like this."  Doe responded, "What does a person who would say something like that look like?"  Ms. Thompson said, "A person like you shouldn't be coming into work talking about anyone else's appearance," "A person like you should be coming into work staying below the radar, you are not here to get attention, you are here to do your work, and go home," "I don't care if you're offended," and "I don't care if your feelings are hurt."

g.      Ms. Thompson wanted Doe to agree with Ms. Thompson that Doe made a statement about another employee behind their back, which Doe would not do because Doe denied making the statement.

h.      Ms. Thompson then stated falsely to Doe that they had camera footage of Doe saying the comment, or words to that effect, which, upon information and belief, is not true.

i.      Doe suffered tangible employment action – Doe was wrongfully suspended on or about February 12, 2020, and subsequently wrongfully terminated/discharged thereafter in or around February 2020, on account of discrimination due to

disability, and in retaliation for Doe's protected conduct/activity including rebuffs of misgendering, harassment, discrimination, and her complaint to the Unit Manager, Ms. Bradley, about the same.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to provide anti-harassment training; and for Defendants to post notice of the verdict in this matter.

**COUNT IX:**
**WRONGFUL DISCHARGE/TERMINATION BASED ON DISABILITY,**
**IN VIOLATION OF THE CITY OF PHILADELPHIA FAIR PRACTICES ORDINANCE**
**("PFPO"), PHILADELPHIA CODE, § 9-1101,** *et seq.*
**(Plaintiff, Jane Doe v. Defendants, Genesis HealthCare and 1526 Lombard Street SNF**
**<u>Operations, LLC d/b/a PowerBack Rehabilitation 1526 Lombard Street)</u>**

71.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

72.     In or around February 2020, Sandra Thompson, Director of Nursing ("DON"), accused Doe of making a statement about another employee behind their back, which was not true, and which statement Doe denies making.  When Doe denied making the statement, Ms. Thompson said, "You look like someone that would say something like this."  Doe responded, "What does a person who would say something like that look like?"  Ms. Thompson said, "A person like you shouldn't be coming into work talking about anyone else's appearance," "A person like you should be coming into work staying below the radar, you are not here to get

attention, you are here to do your work, and go home," "I don't care if you're offended," and "I don't care if your feelings are hurt."

73.    Ms. Thompson wanted Doe to agree with Ms. Thompson that Doe made a statement about another employee behind their back, which Doe would not do because Doe denied making the statement.

74.    Ms. Thompson then stated falsely to Doe that they had camera footage of Doe saying the comment, or words to that effect, which, upon information and belief, is not true.

75.    Doe was wrongfully suspended on or about February 12, 2020, and subsequently wrongfully terminated/discharged thereafter in or around February 2020, on account of discrimination due to gender identity/sex, and in retaliation for Doe's protected conduct/activity including rebuffs of misgendering, harassment, discrimination, and her complaint to the Unit Manager, Ms. Bradley, about the same.

76.    Doe believed she was experiencing discrimination on account of her gender identity at the time, and therefore, shortly after Doe's discharge, in or around February 2020, Doe lodged a formal "grievance complaint" with Genesis Corporate. Doe did not receive any response to her complaint to Genesis Corporate.

77.    Shortly after Doe's discharge, Doe also filed a formal complaint with the U.S. Department of Health and Human Services, Office of Civil Rights, about Doe's wrongful discharge/termination.

78.    Doe also grieved her termination with the union without success.

79.    Defendants' system of progressive discipline traditionally includes the following: (1) "Individual Performance Improvement Plan ('IPIP') Counseling Only – Non-Disciplinary," (2) "First Counseling," (3) "Second Counseling," (4) "Final Counseling," and then "Termination

of Employment." There are four (4) steps short of termination of employment. Doe did not receive any of the above steps of progressive discipline short of termination of employment. This deviates from the corrective opportunities afforded to similarly-situated employees, including cisgender employees.

80.     Doe points to a number of similarly-situated employees, described below, all of whom are cisgender, and who were treated less harshly, but committed more serious conduct, and were not terminated, constituting disparate treatment:

a.     Doe filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and during the administrative phase of the instant case, Defendants identified to the EEOC that Ms. Andrea Crawford, CNA, Unit 2, was suspended pending investigation into a complaint lodged by a resident alleging that Ms. Crawford made a derogatory statement toward the resident. Defendants represent that whether Ms. Crawford made the derogatory statement was determined to be unfounded, but Ms. Crawford received an IPIP for unsatisfactory job performance. Ms. Crawford was not terminated.

b.     Defendants also identified to the EEOC, in response to Doe's EEOC charge, that Nashonda Gittings, CNA, received an IPIP for engaging in verbal disagreement with a coworker. Ms. Gittings was not terminated.

c.     Doe also recollects Ms. Giddings had negative interactions with co-employees and issues with patients directly, on multiple occasions, to Doe's recollection, but Ms. Gittings was not disciplined and was not terminated.

d.      Doe recollects Ms. Gittings on one occasion got in a supervisor's face aggressively on the elevator and called the supervisor a "bitch." Ms. Gittings was not terminated.

e.      Defendants also identified to the EEOC, in response to Doe's EEOC charge, that Ms. Jackie Braxton, CNA, had an IPIP for unsatisfactory job performance concerning a resident care issue. Ms. Braxton was not terminated.

f.      Doe recollects that Ms. Braxton had multiple issues with patients to Doe's recollection but was not disciplined or terminated.

g.      Defendants identified to the EEOC, in response to Doe's EEOC charge, that Ms. Tameka Miller, Charge Nurse, who was in a supervisory or managerial capacity, was issued a Final Written Warning for insubordination regarding an incident with another employee. Ms. Miller was not terminated. Furthermore, Ms. Miller was *not* in a union, while Doe *was*.

h.      Doe did *not* receive an IPIP, a First Warning, a Second Warning, nor a Final Written Warning – no such similar corrective opportunity afforded to similarly-situated employees – short of Doe's termination.

i.      Furthermore, the Cook for the establishment, a White/Caucasian male who is believed to be cisgender, would regularly come to work intoxicated, is believed to have received corrective actions, but was not terminated.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional

distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to provide anti-discrimination, anti-harassment, and anti-retaliation training; and for Defendants to post notice of the verdict in this matter.

## COUNT X:
## FAILURE-TO-ACCOMMODATE DISABILITY IN VIOLATION OF THE CITY OF PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"), PHILADELPHIA CODE, § 9-1101, *et seq.*
## (Plaintiff, Jane Doe v. Defendants, Genesis HealthCare and 1526 Lombard Street SNF <u>Operations, LLC d/b/a PowerBack Rehabilitation 1526 Lombard Street)</u>

81.   All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

82.   Defendants failed to accommodate Plaintiff's known disability, to wit:

a.   During Doe's employment, Doe was misgendered and harassed including with incorrect pronouns.

b.   During Doe's employment, Tameka Miller, Charge Nurse, would tell patients that Doe was male and/or use "he," "him," "his" pronouns when referring to Doe. This occurred multiple times during Doe's employment.

c.   Doe recollects that a patient questioned Doe including with statements like, "I thought a man was supposed to come in and help me," or words to that effect.

d.   Doe was outed as transgender beyond an extent to which she was comfortable and felt unsafe.

e.   Doe reported the misconduct to Unit Manager, Ms. Bradley, in or around December 2019/January 2020.

f.   In or around February 2020, Sandra Thompson, Director of Nursing ("DON"), accused Doe of making a statement about another employee behind their back,

which was not true, and which statement Doe denies making.  When Doe denied making the statement, Ms. Thompson said, "You look like someone that would say something like this."  Doe responded, "What does a person who would say something like that look like?"  Ms. Thompson said, "A person like you shouldn't be coming into work talking about anyone else's appearance," "A person like you should be coming into work staying below the radar, you are not here to get attention, you are here to do your work, and go home," "I don't care if you're offended," and "I don't care if your feelings are hurt."

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses, commissions, and any promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment reference for Plaintiff; to adopt, post, and disseminate a non-discrimination and anti-harassment policy which specifically covers gender identity and expression, if lacking; to provide anti-discrimination, anti-harassment, and anti-retaliation training; and for Defendants to post notice of the verdict in this matter.

## COUNT XI:
### RETALIATORY DISCHARGE/TERMINATION FOR REQUESTS FOR REASONABLE ACCOMODATIONS IN VIOLATION OF THE CITY OF PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"), PHILADELPHIA CODE, § 9-1101, *et seq.* (Plaintiff, Jane Doe v. Defendants, Genesis HealthCare and 1526 Lombard Street SNF <u>Operations, LLC d/b/a PowerBack Rehabilitation 1526 Lombard Street)</u>

83.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

84.     In or around February 2020, Sandra Thompson, Director of Nursing ("DON"), accused Doe of making a statement about another employee behind their back, which was not true, and which statement Doe denies making.  When Doe denied making the statement, Ms. Thompson said, "You look like someone that would say something like this."  Doe responded, "What does a person who would say something like that look like?"  Ms. Thompson said, "A person like you shouldn't be coming into work talking about anyone else's appearance," "A person like you should be coming into work staying below the radar, you are not here to get attention, you are here to do your work, and go home," "I don't care if you're offended," and "I don't care if your feelings are hurt."

85.     Ms. Thompson wanted Doe to agree with Ms. Thompson that Doe made a statement about another employee behind their back, which Doe would not do because Doe denied making the statement.

86.     Ms. Thompson then stated falsely to Doe that they had camera footage of Doe saying the comment, or words to that effect, which, upon information and belief, is not true.

87.     Doe was wrongfully suspended on or about February 12, 2020, and subsequently wrongfully terminated/discharged thereafter in or around February 2020, on account of discrimination due to gender identity/sex, and in retaliation for Doe's protected conduct/activity including rebuffs of misgendering, harassment, discrimination, and her complaint to the Unit Manager, Ms. Bradley, about the same.

88.     Doe believed she was experiencing discrimination on account of her gender identity at the time, and therefore, shortly after Doe's discharge, in or around February 2020, Doe lodged a formal "grievance complaint" with Genesis Corporate.  Doe did not receive any response to her complaint to Genesis Corporate.

89.     Shortly after Doe's discharge, Doe also filed a formal complaint with the U.S. Department of Health and Human Services, Office of Civil Rights, about Doe's wrongful discharge/termination.

90.     Doe also grieved her termination with the union without success.

91.     Defendants' system of progressive discipline traditionally includes the following: (1) "Individual Performance Improvement Plan ('IPIP') Counseling Only – Non-Disciplinary," (2) "First Counseling," (3) "Second Counseling," (4) "Final Counseling," and then "Termination of Employment."  There are four (4) steps short of termination of employment.  Doe did not receive any of the above steps of progressive discipline short of termination of employment. This deviates from the corrective opportunities afforded to similarly-situated employees, including cisgender employees.

92.     Doe points to a number of similarly-situated employees, described below, all of whom are cisgender, and who were treated less harshly, but committed more serious conduct, and were not terminated, constituting disparate treatment:

a.      Doe filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and during the administrative phase of the instant case, Defendants identified to the EEOC that Ms. Andrea Crawford, CNA, Unit 2, was suspended pending investigation into a complaint lodged by a resident alleging that Ms. Crawford made a derogatory statement toward the resident.  Defendants represent that whether Ms. Crawford made the derogatory statement was determined to be unfounded, but Ms. Crawford received an IPIP for unsatisfactory job performance.  Ms. Crawford was not terminated.

b.   Defendants also identified to the EEOC, in response to Doe's EEOC charge, that Nashonda Gittings, CNA, received an IPIP for engaging in verbal disagreement with a coworker.  Ms. Gittings was not terminated.

c.   Doe also recollects Ms. Giddings had negative interactions with co-employees and issues with patients directly, on multiple occasions, to Doe's recollection, but Ms. Gittings was not disciplined and was not terminated.

d.   Doe recollects Ms. Gittings on one occasion got in a supervisor's face aggressively on the elevator and called the supervisor a "bitch."  Ms. Gittings was not terminated.

e.   Defendants also identified to the EEOC, in response to Doe's EEOC charge, that Ms. Jackie Braxton, CNA, had an IPIP for unsatisfactory job performance concerning a resident care issue.  Ms. Braxton was not terminated.

f.   Doe recollects that Ms. Braxton had multiple issues with patients to Doe's recollection but was not disciplined or terminated.

g.   Defendants identified to the EEOC, in response to Doe's EEOC charge, that Ms. Tameka Miller, Charge Nurse, who was in a supervisory or managerial capacity, was issued a Final Written Warning for insubordination regarding an incident with another employee.  Ms. Miller was not terminated.  Furthermore, Ms. Miller was *not* in a union, while Doe *was*.

h.   Doe did *not* receive an IPIP, a First Warning, a Second Warning, nor a Final Written Warning – no such similar corrective opportunity afforded to similarly-situated employees – short of Doe's termination.

39

i.      Furthermore, the Cook for the establishment, a White/Caucasian male who is

believed to be cisgender, would regularly come to work intoxicated, is believed to

have received corrective actions, but was not terminated.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment in her favor and against

Defendants for an amount including back and front pay, overtime, seniority, benefits, bonuses,

commissions, and any promotions Plaintiff would have received; compensatory damages for pain

and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional

distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of

suit; and equitable/injunctive relief requiring that Defendants provide a neutral employment

reference for Plaintiff; to adopt, post, and disseminate a non-discrimination and anti-harassment

policy which specifically covers gender identity and expression, if lacking; to provide anti-

discrimination, anti-harassment, and anti-retaliation training; and for Defendants to post notice of

the verdict in this matter.

## <u>JURY DEMAND</u>

Plaintiff hereby requests a trial by jury of eight (8) members on all counts so triable.

Respectfully submitted,

**THE LAW OFFICES OF ERIC A. SHORE, P.C.**

DATED: <u>02/05/2021</u>        BY: _____

**JUSTIN F. ROBINETTE, ESQUIRE**
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102
Tel:  (215) 944-6121
Fax: (215) 944-6124
E-mail: <u>JustinR@ericshore.com</u>

*Attorney for Plaintiff, Jane Doe*