IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*Jane Doe,*

                  Plaintiff.

    v.

*Genesis Healthcare and 1526 Lombard Street SNF Operations, LLC d/b/a Powerback Rehabilitation,*

                  Defendants.

Case No. 21-cv-00551

**JOINT RULE 26(f) REPORT**

    Following a fulsome discussion, as contemplated by Fed. R. Civ. P. 26(f), the Parties aver as follows:

**I.   Counsel**

    A.   Lead counsel for Plaintiff(s):     Robert H. Graff

    B.   Lead counsel for Defendant(s):   James Bucci; Lawrence Bluestone

    C.   Counsel who participated in Rule 26(f) conference on behalf of Plaintiff(s):

        LAW OFFICES OF ERIC A. SHORE
        Robert H. Graff (PA Bar No. 206233)
        Two Penn Center
        1500 JFK Boulevard, Suite 1240
        Philadelphia, PA 19102
        Ph: (267) 547-0138
        Fx: (215) 944-6124
        robertg@ericshore.com

    D.   Counsel who participated in Rule 26(f) conference on behalf of Defendant(s):

GENOVA BURNS
Lawrence Bluestone
1600 Market Street, Suite 1650
Philadelphia, PA  19103
 Ph: (973) 535-4434
 Fax: (215) 564-0333
    lbluestone@genovaburns.com

**II.   Description of Claims and Defenses**

Plaintiff's Summary:

Plaintiff was employed by Genesis Healthcare as a nursing assistant.  Plaintiff identifies as a transgender woman of color.  Plaintiff has a disability in the form of: (1) an actual physical impairment in that Plaintiff has a biological condition plausibly of physical origin due to brain neuroanatomy, and the formation of that brain neuroanatomy in the womb, which substantially limits the major life activities of interacting with others, reproducing, and social functioning.  (2) Plaintiff has a record of a disability in the form of a biological condition plausibly of physical origin when Plaintiff's brain neuroanatomy was formed in the womb before birth resulting in Plaintiff's anatomical sex not corresponding with her gender identity.  (3) Plaintiff was perceived or regarded by Defendants as disabled in that Defendants stereotyped her as having a mental impairment.  However, being transgender is *not* a mental disorder.  (4). Alternatively, upon information and belief, Plaintiff has an actual physical and/or mental impairment in the form of gender dysphoria ("GD"), defined as clinically significant distress associated with being transgender, which substantially limits the major life activities of interacting with others, reproducing, and social functioning.

During Plaintiff's employment, she was misgendered and harassed.  Plaintiff was subjected to a hostile work environment.  Defendants failed to accommodate Charging Party's gender

dysphoria and/or physical impairment including with requested name and pronouns. Defendants also retaliated against Plaintiff for her requests for reasonable accommodations by suspending and terminating her. During Plaintiff's employment, Tameka Miller, Charge Nurse, would tell patients that Plaintiff was male and/or use "he," "him," "his" pronouns when referring to Plaintiff. This occurred multiple times. This was humiliating for Plaintiff because patients then questioned her, including with statements like, "I thought a man was supposed to come in and help me," or words to that effect. Plaintiff also felt outed beyond an extent to which she was comfortable by this misconduct. Plaintiff reported the misconduct to Unit Manager, Ms. Bradley, in or around December 2019/January 2020 approximately two (2) months before the circumstances described below. Plaintiff therefore engaged in protected conduct/activity prior to her wrongful and retaliatory discharge.

In or around February 2020, Sandra Thompson, Director of Nursing ("DON"), accused Plaintiff of making a statement which was not true, and which Plaintiff denies making. When Plaintiff denied making the statement, Ms. Thompson said, "You look like someone that would say something like this." Plaintiff responded, "What does a person who would say something like that look like?" Ms. Thompson said, "A person like you shouldn't be coming into work talking about anyone else's appearance," "A person like you should be coming into work staying below the radar, you are not here to get attention, you are here to do your work, and go home," "I don't care if you're offended," and "I don't care if your feelings are hurt." Ms. Thompson wanted Plaintiff to agree that she made a statement, which she would not do because she denies making the statement being used against her here. Ms. Thompson then stated that they had camera footage of Plaintiff saying the comment, or words to that effect, which, upon information and belief, is not true, and cannot be seen on a camera at any rate. The accusation was false, malicious, and

3

pretextual. Plaintiff was suspended on or about February 12, 2020, and subsequently terminated thereafter in or around February 2020. Plaintiff then lodged a formal "grievance complaint" with Genesis Corporate and a complaint with the U.S. Department of Health and Human Services, Office of Civil Rights, about her termination. Plaintiff alleges pretextual reasons for her termination and maintains that sex and disability were a motivating factor in her discharge.

Defendants' Summary:

Plaintiff was employed by 1526 Lombard Street SNF Operations, LLC d/b/a Powerback Rehabilitation ("PowerBack") beginning on or around February 29, 2019 as a Certified Nursing Assistance ("CNA"). Plaintiff was not employed by "Genesis Healthcare" at any time.

On or about February 9, 2020, Plaintiff got into an altercation with Charge Nurse, Tamika Miller. After an argument over whether Plaintiff provided vitals for a patient to Ms. Miller in a timely fashion, Plaintiff and a coworker were heard being disrespectful to Ms. Miller, with Plaintiff calling Ms. Miller names and laughing at Ms. Miller and making fun of her physical appearance, with Plaintiff comparing Ms. Miller to a dog (calling her a "pug face" and "flat face.") Ms. Miller complained about Plaintiff's bullying of her to management, which suspended Plaintiff pending an investigation.

During the investigation, another CNA who witnessed the altercation confirmed that Plaintiff made fun of Ms. Miller's physical appearance and compared her to a dog. PowerBack has a no tolerance policy with respect to bullying. Based on this policy, of which Plaintiff was well aware, PowerBack terminated Plaintiff's employment.

With respect to Plaintiff's current allegations of gender and disability discrimination, the evidence will show these claims are unfounded. Plaintiff never reported any concerns regarding misgendering or any other suggestions of discrimination to anyone at PowerBack. The termination

4

of Plaintiff's employment had nothing to do with her gender identity or disability. As noted above, Plaintiff's employment was terminated because Plaintiff violated PowerBack's no-tolerance bullying policy.

**III.   Anticipated Scope of Discovery**

    A. Discovery will be needed on all aspects of the case, including the allegations raised by Plaintiff and the defenses proffered by Defendant on the claims being made, as well as Plaintiff's claims for damages. Accordingly, discovery conducted by both Parties will likely be focused on information pertaining to Plaintiff's work environment, work history, including documentation related to Plaintiff's work performance, written and oral communications, co-worker and supervisor testimony, and similar categories of information.

    B. Anticipated number of interrogatories per Party:     25

    C. Anticipated number of depositions per Party:     10

    D. Neither Party proposes to exceed the presumptive limits in the Federal Rules of Civil Procedure for discovery.

    E. The Parties do not anticipate the need for any third-party discovery.

    F. The Parties do not anticipate the need for experts at this time.

**IV.   Status of Discovery**

Each party will serve an initial set of interrogatories and requests for production of documents within fourteen (14) days following the Rule 16 conference on May 5, 2021.

**V.   Proposed Case Management Deadlines**

    A. Deadline to serve initial disclosures under Rule 26(a)(1):     May 19, 2021

    B. Deadline to amend pleadings to add claims or Parties: June 7, 2021

    C. Deadline for affirmative expert reports (if any) and disclosure of lay witness opinion testimony with related information and documents (if any): <u>October 3, 2021</u>

    D. Deadline for rebuttal expert reports (if any): <u>November 2, 2021</u>

    E. Deadline to complete discovery: <u>September 2, 2021</u>

    F. If any Party seeks more than 120 days for fact discovery, explain why.

    G. Deadline to file motion for summary judgment: <u>December 17, 2021</u>

## VI. Deposition Scheduling

The Court expects the Parties to meet and confer as soon as practicable to set aside dates to hold open for depositions before the close of discovery. If the Parties have not already done so, the Court will order the Parties to do so within two weeks of the Rule 16 conference.

Have the Parties set aside dates for deposition? ___ Yes  <u>X</u> No

If yes, what are those dates?

If no, when do the parties intend to confer, and how many dates do they intend to set aside?

<u>The parties intend to confer within seven (7) days following the Rule 16 conference and intend to set aside __5__ dates.</u>

## VII. Electronic Discovery

Should discovery of ESI become necessary, the parties will cooperate in good faith to reach a mutually agreeable ESI stipulation, including production of ESI in its native form.

## VIII. Protective Orders and Confidentiality Agreements

The Parties anticipate the need for a protective order in this case. The Parties anticipate that discovery will involve the production of the Defendant's confidential and private financial, technical, business, customer information, and other information not generally known to the public, the disclosure of which may hurt the Defendant's ability to compete in the marketplace.

The Parties also anticipate that discovery will involve the personal employment information, medical information, and other personal information of the Plaintiff's, the disclosure of which may cause embarrassment and humiliation to the Plaintiff.

**IX.   Alternative Dispute Resolution**

    A. The Parties have not engaged in settlement discussions. Defendant prefers to wait until after initial discovery and the deposition of Plaintiff have concluded.

    B. Defendant does not desire to engage in alternative dispute resolution at this time.

    C. James Bucci will have authority to discuss settlement on behalf of the Defendant. Robert H. Graff will have authority to discuss settlement on behalf of the Plaintiff.

**X.   Consent to Send Case to a Magistrate Judge**

The Parties do not consent to have a United States Magistrate Judge conduct any or all proceedings in this case outside of conducting a settlement conference.

**XI.   Other Matters**

None.

US2008 16362991 2

DATE: May 5, 2021

| | |
|---|---|
| */s/ Robert H. Graff* | */s/ Lawrence Bluestone* |
| LAW OFFICES OF ERIC A. SHORE | GENOVA BURNS |
| Robert H. Graff, Esq. (PA Bar No. 206233) | Lawrence Bluestone |
| Two Penn Center | 1600 Market Street, Suite 1650 |
| 1500 JFK Boulevard, Suite 1240 | Philadelphia, PA  19103 |
| Philadelphia, PA 19102 | Ph: (973) 535-4434 |
| Tel: (267) 546-0138 | Fax: (215) 564-0333 |
| Fax: (215) 944-6124 | lbluestone@genovaburns.com |
| robertg@ericshore.com | |
| **COUNSEL FOR PLAINTIFF** | **COUNSEL FOR DEFENDANTS** |

US2008 16362991 2